IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOHN BROWN, JR. | : | |
| Petitioner/Plaintiff, | : | CIVIL ACTION NO. 2:22-cv-3296 |
| v. | : | |
| ALAN SIMONS, | : | |
| Defendant/Respondent. | : | |

**PETITION TO CONFIRM ARBITRATION AWARD
AND COMPLAINT FOR BREACH OF CONTRACT**

Petitioner/Plaintiff John Brown, Jr., by way of a petition and complaint against Respondent/Defendant Alan Simons, alleges and states as follows:

**INTRODUCTION**

1. This is a petition to confirm an arbitration award and an action for breach of contract.

2. Petitioner and Plaintiff John Brown, Jr. ("Brown") respectfully petitions this Court to confirm an arbitration award ("Award") entered in an arbitration between the parties on June 7, 2022, as subsequently clarified by the arbitration panel ("Panel") on June 15, 2022, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.

3. Brown further requests that the Court find that Respondent/Defendant Alan Simons ("Simons") breached the terms of a June 2020 Settlement Agreement ("Settlement Agreement") between the parties that the Award found was fully valid and enforceable, but with which Simons has failed to comply.

## PARTIES

4. Brown is an adult individual and a citizen and resident of Pennsylvania, with an address of 107 Springhouse Lane, Newtown Square, PA 19073.

5. Defendant/Respondent Alan Simons ("Simons") is an adult individual and a citizen and resident of Florida, with an address of 2000 S Ocean Blvd, Apt 305 S, Palm Beach, Florida, 33480-1137.

## JURISDICTION AND VENUE

6. For diversity purposes, Brown is a citizen of Pennsylvania, and Simons is a citizen of Florida. Thus, complete diversity exists between the parties.

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

8. This Court has personal jurisdiction over Simons because this action arises from an arbitration award made within this district.

9. Venue is proper as provided in 28 U.S.C. § 1391 and 9 U.S.C. § 9 because this action arises from an arbitration award made within this district.

## FACTS

10. In 2007, Brown purchased a 50% interest in RDS Vending, LLC ("RDS") a regional vending company, from Simons.

11. Under the several agreements signed between the parties concerning this purchase, Simons retained a 50% interest in RDS, and continued to serve as its sole Manager, with near-plenary power over the day-to-day operations and finances of RDS.

12. Brown, in contrast, remained a relatively passive investor.

13. Under a "Put-Call Agreement" between the parties, under certain conditions and during certain periods of time, Simons had the right to "put" his remaining 50% share in RDS to Brown, thus forcing Brown to buy that interest, and Brown had a corresponding right to "call" Simons' interest, forcing him to sell, all at a price set by an agreed valuation formula.

14. Since 2018, multiple disputes have arisen between Brown and Simons over their shared interest in RDS that have led to three legal actions, one of which is pending before this Court.

**The Simons Arbitration**

15. In late 2018, a dispute arose between the parties over Brown's suspicion that Simons had abused his fiduciary position as RDS's Manager to improperly enrich himself and his family at Brown's expense.

16. In response to Brown's request for an independent review of RDS's finances, Simons abruptly filed a demand for arbitration against Brown (the "Simons Arbitration") in March 2019.

17. In the Simons Arbitration, Simons claimed that Brown had breached his obligations under the Put-Call Agreement and other agreements between the parties by "encumbering" his interest in RDS, and thus had forfeited his right to purchase Simons' 50% interest in that company.

18. On October 17, 2019, the arbitrator in the Simons Arbitration entered an award granting Brown's motion for summary judgment and dismissing Simons' claims against him.

19. Simons filed a petition to overturn this award on October 30, 2019, that was assigned to this Court. *See Simons v. Brown*, Case No. 2:19-cv-05074-GAM, Dkt. Nos. 1, 2.

20. On March 17, 2020, this Court entered an Order denying Simons' petition to overturn the award in the Simons Arbitration, and granting Brown's cross-motion to confirm that

award. *Id.*, Dkt. 14.

21. Simons appealed this Court's March 17 Order to the United States Court of Appeals for the Third Circuit, which affirmed the Court's decision in a Judgment issued on February 1, 2022. *See Simons v. Brown*, No. 20-1814 (3rd Cir.), Dkt. 39-1.

22. After the case returned to this Court from the Third Circuit, Brown filed a petition for attorney fees ("Fee Petition") seeking some $400,000 in fees and costs accrued in obtaining the award in the Simons Arbitration and preserving that award on appeal. Brown's Fee Petition has been fully briefed and remains pending before this Court. *See Simons v. Brown*, Case No. 2:19-cv-05074-GAM, Dkt. Nos. 23, 24, 25.

**The CCP Action**

23. While the Simons Arbitration was wending its way through the initial proceeding and subsequent appeals, two other disputes arose between the parties that resulted in litigation.

24. On March 25, 2019, Brown filed an action against Simons in the Court of Common Pleas for Philadelphia County, accusing Simons of misusing his powers as the Manager of RDS to secretly siphon millions of dollars from that company, all to the benefit of himself and his family and the detriment of Brown. *See Brown, et al. v. Simons*, No. 190303075 (the "CCP Action").

25. In the CCP Action, Brown has raised claims against Simons for breach of contract, breach of fiduciary duty, and conversion. *Id.*

26. On November 15, 2021, the court in the CCP Action entered two orders sanctioning Simons for failing to comply with his discovery obligations by striking his Answer and New Matter and entering judgment on liability against Simons and in Brown's favor. Copies of those orders are attached hereto as **Exhibit A.**

27. Simons' motion for reconsideration of these two sanctions orders was denied.

Thus, all that remains in the CCP Action is to conduct a trial or hearing on Brown's damages.

28. The CCP Action is scheduled to enter the trial pool on February 2, 2023.

**The Put-Call Arbitration**

29. On March 17, 2020 – the same day that this Court denied Simons' petition to vacate the Simons Arbitration award and granted Brown's cross-motion to confirm that award – Simons abruptly "put" his remaining stake in RDS to Brown, thus requiring Brown to buy that interest.

30. Yet another disagreement then arose between Brown and Simons regarding the calculation of the purchase price for Simons' 50% share in RDS under the Put-Call Agreement. Per the terms of that agreement, the parties submitted this dispute to arbitration (the "Put-Call Arbitration") to determine the proper price for Simons' shares.

31. In the Put-Call Arbitration, Simons contended that the purchase price for his shares had been set, not by the Put-Call Agreement, but by a settlement agreement reached between the parties on June 4, 2020, and memorialized in an email from Simons' counsel George Bochetto, Esq., (the "Bochetto Bullet Point Summary") and a June 5 response from Brown's counsel Brian North, Esq. A copy of the Bochetto Bullet Point Summary and North's response is attached hereto as **Exhibit B.**

32. Similarly, when opposing Brown's Fee Petition in this Court, Simons argued that the Settlement Agreement was a valid and binding agreement, under which the parties had also agreed to waive any claims for reimbursement of legal fees incurred in the several actions between them. Dkt. 24, pp. 6-7 (citing the Bochetto Bullet Point Summary for the proposition that the parties agreed that there would be "***No reimbursement to anyone of attorneys fees incurred***") (emphasis in original).

33. In both the Put-Call Arbitration and in this Court, Brown argued that the Settlement

Agreement was tentative, and expressly conditioned upon the parties agreeing to a purchase price for Simons' remaining share of RDS and consummating that transaction – events that never occurred. Dkt. 25, p. 4.

34. On June 7, 2022, the Panel in the Put-Call Arbitration issued an Award finding that "[t]he terms of the oral agreement reached between the parties on June 4, 2020, as set forth in George Bochetto's Bullet Point Summary are binding," and setting the Purchase Price for Simons' remaining interest in RDS at $6.5 million – some $2 million more than Brown believed he was required to pay under the express terms of the Put-Call Agreement. A copy of the Panel's Award in the Put-Call Arbitration is attached hereto as **Exhibit C.**

35. On June 14, 2022, Brown sought clarification from the Panel as to whether its ruling regarding the binding nature of the Settlement Agreement applied to all of the bullets in the Bochetto Bullet Point Summary, or only those provisions relating to the purchase price to be paid for Simons' remaining shares, since the Panel's purview was limited to determining that purchase price.

36. In response, Simon's counsel stated:

> We believe the Award is perfectly clear when it stated: "4-The terms of the oral agreement reached between the parties on June 4, 2020, as set forth in George Bochetto's Bullet Point Summary are binding." In our view, each and all of the Bullets are binding, and there can be no picking and choosing amongst Bullets depending upon whether they favor one side or the other.

A copy of this correspondence between Brown, Simons, and the Panel is attached hereto as **Exhibit D.**

37. On June 15, 2022, the Panel once again sided with Simons, confirming that all of the terms of the Bochetto Bullet Point Summary were binding upon the parties. *See* **Exhibit E**.

**Brown Complies With the Put-Call Arbitration Award**

38.     Brown believes that the Panel in the Put-Call Arbitration was wrong in concluding that the Settlement Agreement was enforceable, and also exceeded its authority by ruling on the enforceability of other terms of that alleged Settlement Agreement that were never before it, never discussed, and never within the Panel's purview.

39.     Nevertheless, Brown has complied and remains willing to comply with the Award.

40.     For example, the Award required Brown to pay Simons $6.5 million for his interest in RDS. Brown complied with this directive, paying Simons $6.5 million to buy out his remaining shares in a transaction that closed on August 8, 2022.

41.     The Award and underlying Bochetto Bullet Point Summary also require that all litigation between the parties be "ended," with "no further motions, etc." and that there be "[n]o reimbursement to anyone of attorneys fees incurred."

42.     Pursuant to these terms, Brown was willing to dismiss the CCP Action, even though he holds a judgment in his favor on liability and seeks millions in damages and attorney fees from Simons.

43.     Brown was also willing to withdraw his Fee Petition now pending before this Court, waiving some $400,000 in attorney fees that is due to him for obtaining and successfully defending the award in the Simons Arbitration.

44.     However, although Brown performed and was willing to continue performing under the Settlement Agreement, Simons subsequently breached and repudiated his own obligations under that same Agreement.

**Simons Ignores the Unfavorable Provisions of the Award and Breaches the Settlement Agreement**

45.     On June 23, 2022, Simons filed a motion in this Court to enforce the Award and

7

the Settlement Agreement that the Award found to be enforceable.  Dkt. 26.  In that pleading, Simons argued forcefully that "[t]his Court should enforce the settlement of the parties as found in the Award of June 7, 2022," and therefore dismiss this action and Brown's pending Fee Petition.  *Id.* at 2.

46. Just four days later, on June 27, 2022, Simons withdrew his motion to enforce the Settlement Agreement.  Dkt. 27.

47. Despite his own counsel's repeated assertion that the Settlement Agreement is binding, and that "[t]here can be no picking and choosing amongst Bullets depending upon whether they favor one side or the other," Simons has done exactly that – reaping the benefit of those terms of the Award and the June 2020 Bochetto Bullet Point Summary that favor him, and ignoring those that do not.

48. First, item number 2 of the Bochetto Bullet Point Summary states that there will be "No reimbursement to anyone of attorneys fees incurred."  Ex. B.

49. Discovery in the CCP action has revealed, and Simons has conceded, that he personally caused RDS to reimburse him for over $880,000 in legal fees between October 2020 and August 2021 – months *after* Simons reached a supposedly enforceable Settlement Agreement providing that there would be "no reimbursement to anyone" of such fees.  *See* **Exhibit F**, Defendant's Objections and Responses to Plaintiff's Second Set of Interrogatories, at No. 3.

50. Despite the clear provisions of the Bochetto Bullet Point Summary that neither Brown nor Simons is entitled to reimbursement for the legal fees incurred in connection with their several disputes, and despite Brown's willingness to comply with this settlement term and waive his claim for fees under the Fee Petition, Simons has repeatedly refused to return to RDS the $880,000 in legal fee reimbursements that he caused the company to pay to him.

51.     Second, the Award and the Settlement Agreement that the Award found was enforceable both require that, prior to the closing on the sale of Simons' remaining interest in RDS to Brown, Simons would equally distribute to each party the cash in RDS's cash balances, but that "$1,000,000 will remain at RDS for post-closing operating expenses." Exs. B, C.

52.     Despite his clear duty to leave a $1 million cash reserve in RDS at the time of closing, Simons failed to do so.

53.     On the contrary, Simons left so little cash in the company upon his departure that by August 11, 2022 – just three days after the closing – RDS's bookkeeping staff reported to Brown that the company was out of cash, and that it would be unable to pay its bills or meet payroll unless Brown personally infused more cash into the company.

54.     This severe cash shortfall arose from at least two three factors. First, although the Award and Settlement Agreement required Simons to leave $1 million in RDS for "post-closing operating expenses," Simons improperly counted the cash in RDS's 4,700 vending machines as being available to meet those "operating expenses."

55.     In fact, at least $60 must remain in each machine at all times so that it is able to make change when customers use the machine. Thus, Simons improperly counted some $300,000 in funds as being available to meet operating expenses that were not at all available for that use. And as a practical matter, none of the cash in the RDS vending machines was available to meet operating expenses, since it was locked up in 4,700 machines scattered across the Delaware Valley.

56.     Moreover, upon information and belief Simons greatly exaggerated the amount of cash in the RDS machines. Although Simons represented to Brown that there was some $535,000 in cash in those machines on the closing date, he had no means of supporting that claim, which is almost twice the minimum amount that should have been present in the machines in order for them

to be able to provide change.

57. To make matters worse, on Friday, August 5, 2022 – the last business day before the closing, and his last day in power as the Manager of RDS – Simons caused RDS to issue him an additional cash distribution of $275,000.

58. This unauthorized and improper 11th-hour distribution left less than $200,000 in RDS's operating bank accounts; that is, funds actually available to meet operating expenses.

59. This distribution to Simons also immediately obligated RDS to make an equal $275,000 distribution to Brown under the terms of the RDS Operating Agreement.

60. This matching distribution to Brown, if made, would reduce RDS's operating cash below zero, rendering it utterly unable to meet its obligations in the normal course of business.

61. Indeed, Simons acknowledged this fact. In telling Brown on Monday August 8 that he had taken an additional $275,000 on Friday August 5, Simons admitted that Brown was entitled to an equal distribution, but airily advised Brown that he should "leave that money in the company," or there would not be sufficient cash to operate the business.

62. Finally, upon information and belief Simons falsely inflated the amount of cash in the company prior to his departure, and then stripped the company of operating cash prior by failing to pay bills as they came due in the ordinary course, leaving Brown to pay for months' worth of services or goods provided to the company during Simons' term as Manager.

63. By way of example only, on August 17, 2022, Simons presented Brown with a bill from RDS's former accountants, Freidman LLP, for over $30,000 in accounting services – a bill that had been accruing unpaid since May 2022.

64. <u>Third</u>, item number 7 of the Bochetto Bullet Point Summary states that "Alan [Simons] will work for RDS in a transition capacity for 12 months: 6 months in Philly region, 6

months by phone while in Fl. During FL 6 months, Alan will travel back to Philly as needed a couple of times." Ex. B.

65. In response, Brown's counsel clarified that Simons would render these transitional services without pay – a clarification to which Simons never objected. *Id.*

66. Despite his obligation to work on-site at RDS for 6 months and remotely for another 6 months, all without pay, Simons first demanded to be paid for any such services, and then abruptly announced that he would perform no further in-person services after August 11, 2022 – after just two half-days of work. As of the date of this filing, Simons has not returned to the RDS premises to provide transitional assistance of any kind.

## COUNT ONE
## TO CONFIRM ARBITRATION AWARD UNDER 9 U.S.C § 9

67. Brown incorporates by reference the allegation contained in the preceding paragraphs of this pleading as if the same were set forth in full herein.

68. Brown has commenced this proceeding within one year after the Award was made, as required by § 9 of the FAA.

69. The Award represents an award and binding decision of the arbitration panel. The Arbitration Award is final in all respects.

70. The FAA provides that a court must confirm an arbitration award unless it finds grounds to vacate, modify, or correct the award. 9 U.S.C. § 9.

71. Simons has not alleged that there are any grounds to vacate, modify, or correct the award. On the contrary, Simons has repeatedly filed pleadings with this Court asserting that the Award and Settlement Agreement are both enforceable, and has actively sought to enforce the terms of the Award.

## COUNT TWO
## BREACH OF CONTRACT

72. Brown incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

73. In the Award, the Panel determined that the Settlement Agreement between Brown and Simons is a valid and enforceable contract.

74. In pleadings filed with this Court, Simons has judicially admitted that same fact; that is, that the Settlement Agreement is a valid and enforceable agreement between the parties.

75. Up to the time of Simons' breach, Brown satisfied all of his obligations under the Settlement Agreement. He purchased Simons' remaining interest in RDS at the price set by the Panel according to the Settlement Agreement, and stood ready to comply with the remaining terms of that Agreement.

76. Simons, in contrast, materially breached and/or anticipatorily repudiated his obligations under the Settlement Agreement by:

   a. Failing to return to RDS the $880,000 in attorney fee reimbursements that he caused RDS to pay to him in 2020 and 2021;

   b. Failing to leave $1 million in operating capital in RDS when exiting the company on August 8, 2022; and

   c. Repudiating and breaching his duty to work in transition for RDS for 6 months in the Philadelphia area following the sale of his interest to Brown, plus 6 months remotely from Florida.

77. As a result of Simons' multiple breaches of the Settlement Agreement, Brown has suffered damages in excess of $75,000, exclusive of interest, costs, and fees.

WHEREFORE, Petitioner/Plaintiff John Brown, Jr. respectfully prays the Court:

    a. For an Order confirming the June 7, 2022 Award pursuant to Count I herein;

    b. For a judgment in Brown's favor and against Simons on Count II herein, awarding Brown his actual damages arising from Simons' breach of the Settlement Agreement in an amount to be proven at the trial of this matter, together with pre- and post-judgment interest at the maximum legal rate, and such attorney fees and costs as may be appropriate under contract or statute, and releasing Brown from further performance thereunder;

    c. That the costs of this action be taxed against Simons; and

    d. For such other and further relief as the Court may deem just and proper.

Dated:  August 18, 2022

Respectfully Submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

By: */s/ Craig D. Mills*
Craig D. Mills (PA ID 81331)
Andrew G. Hope (PA ID 317932)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA  19102
Telephone:  (215) 665-8700
Facsimile:   (215) 665-8760
E-mail:     craig.mills@bipc.com
            andrew.hope@bipc.com

*Counsel for Petitioner/Plaintiff John Brown, Jr.*