IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BROWN, JR. | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-3296 |
| | : | |
| ALAN SIMONS | : | |

| | | |
|---|---|---|
| ALAN SIMONS | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-5074 |
| | : | |
| JOHN BROWN et al. | : | |

**MCHUGH, J.**                                                                                       **March 7, 2023**

### MEMORANDUM

These consolidated cases arise out of protracted litigation between John Brown and Alan Simons over their previously shared business, RDS Vending LLC.  I previously confirmed an arbitration award in favor of Brown, a decision affirmed by the Court of Appeals.  The parties now return with a dispute over a second arbitration award, one that ironically addresses a purported settlement between them.  For the reasons that follow, I will confirm that award – a ruling that then has implications for other motions that are still pending.

**I.      Relevant Background**

In 2007, John Brown, Jr. purchased a 50% interest in RDS Vending, LLC ("RDS") from Alan Simons.  Compl. ¶ 10, ECF 1, 22-3296.[1]  Simons continued to serve as the sole manager of RDS and retained a 50% interest in the company.  *Id.* at ¶ 11.  The parties also entered a "Put-Call

---

[1] Because this record spans two dockets, I have included the docket number in citations to the record for the sake of clarity.

Agreement," under which (1) Simons had the right to "put" his remaining 50% share in RDS to Brown, forcing Brown to buy that interest, and (2) Brown had a right to "call" Simons' interest, forcing Simons to sell.  *Id.* at ¶ 13.  The Put-Call Agreement included a valuation formula to set a purchase price should either party exercise their contractual option.  *Id.*

### A. Litigation Following the First Arbitration

In 2019, Simons brought an arbitration action against Brown seeking a declaration that Brown had materially breached multiple business agreements.  *Id.* at ¶¶ 15-17.  After the arbitrator granted Brown's Motion for Summary Judgment, Simons filed a Motion to Vacate the award in this Court.  *Id.* at ¶¶ 18-19; *see* ECF 1, 19-5074.  I denied Simons' motion and granted Brown's Cross-Motion to Confirm the award.  ECF 13, 19-5074; ECF 5, 19-5074.  Subsequently, Brown filed a Motion for Attorney Fees and Costs, and Simons appealed my decision to the Third Circuit.  ECF 15, 19-5074; ECF 18, 19-5074.  The Third Circuit affirmed, and Brown filed a Supplemental Motion for Attorney Fees and Costs, still pending before me.  ECF 22, 19-5074; ECF 23, 19-5074.

### B. The Second Arbitration (the "Put-Call Arbitration")

On the same day that I confirmed the first arbitration award, March 17, 2020, Simons exercised his contractual right to "put" his stake in RDS to Brown, requiring Brown to buy Simons' interest.  Compl. ¶ 29, ECF 1, 22-3296.  Because Brown and Simons could not agree on the appropriate calculation for the purchase price of Simons' share, they submitted their dispute to arbitration per the terms of their agreement.  *Id.* at ¶ 30.  According to Brown's Complaint, Simons argued to the arbitrators that the purchase price for his shares in RDS had been set by a settlement agreement reached by the parties on June 4, 2020, which was recorded in an email from Simons' counsel (George Bochetto) to Brown's counsel.  *Id.* at ¶ 31; *see* Pl.'s Ex. B, ECF 1-4, 22-2396.  Brown responded that the June 4 settlement was tentative and conditioned on the parties reaching a consensus about the purchase price, which they failed to achieve.  Compl. ¶ 33, ECF 1, 22-3296.

On June 7, 2022, the arbitrators issued an award favoring Simons, and found that the June 4 settlement, as memorialized in Bochetto's email, was a binding agreement. *See* Pl.'s Ex. C, ECF 1-5, 22-3296. In so doing, the panel set the purchase price for RDS at $6.5 million. *Id.* The other relevant terms of the agreement are as follows:

- $1,000,000 shall remain at RDS for post-closing expenses;
- No attorneys' fees shall be awarded to the parties;
- All litigation must end; and
- Simons will work for RDS in a transitional capacity for 12 months.[2]

*See id.*; Pl.'s Ex. B, ECF 1-4 at 2-3, 22-2396. In addition, the award stated that "[t]he panel shall retain jurisdiction of this matter until the above transaction has been finalized." Pl.'s Ex. C, ECF 1-5, 22-2396.

Because the panel's award did not address every term listed in Bochetto's June 4 email, Brown's counsel reached out to the panel to request clarification. Pl.'s Ex. D, ECF 1-6, 22-2396. On June 15, 2022, the Panel confirmed that all terms of the oral agreement as set forth in the email summary are binding on the parties. Pl.'s Ex. E, ECF 1-7 at 2, 22-2396.

### C. Aftermath of the Put-Call Arbitration

Following the put-call arbitration award, Simons filed a Motion to Enforce the Settlement in the action already pending in front of me, further requesting that I dismiss any pending matters including Brown's Motion for Attorney Fees and Costs. *See* ECF 26, 19-5074. Days later, Simons withdrew that motion. ECF 27, 19-5074. I then held a status conference with the parties, who

---

[2] Brown emphasizes that his attorney responded to Bochetto's email stating in relevant part that "[i]t should be clear that Alan's 12 month transitional work is without compensation, as we discussed." Pl.'s Ex. B, ECF 1-4, 22-3296. Brown thus maintains that the settlement requires Simons' transitional work to be performed without compensation.

represented that, due to the put-call arbitration award, they intended to stipulate to a dismissal of the case within one month.  ECF 28, 19-5074.

In August 2022, however, Brown filed a joint Petition to Confirm Arbitration Award and Complaint for breach of contract, creating a new civil action between the parties at Docket No. 22-2396.  Brown alleged that while he has paid Simons the $6.5 million for Simons' stake in RDS, in compliance with the arbitration award, Simons has breached several provisions of the agreement.  Compl. ¶¶ 40, 44, ECF 1, 22-3296.  Specifically, Brown alleged that Simons (1) caused "RDS to reimburse him for over $880,000 in legal fees between October 2020 and August 2021," (2) failed to maintain $1 million for post-closing operating expenses in RDS's accounts, and (3) abandoned his commitment to continue working for RDS in a transitional capacity for one year without compensation.  *Id.* at ¶¶ 48-49, 51-56, 64-66; *see* Pl.'s Ex. B, ECF 1-4 at 2-3, 22-2396.  Brown further asserted that, although he has intended to withdraw his pending fee petition in this Court (ECF 23, 19-5074) and his pending state law claim pursuant to the settlement's "no litigation" clause, he has repudiated those obligations in light of Simons' alleged breach.  Compl. ¶¶ 43-44, ECF 1, 22-3296.

In response to Brown's new complaint, Simons filed a second Motion to Enforce the Settlement in the civil action already pending from the first arbitration.  ECF 29, 19-5074.  Without directly acknowledging Brown's new civil action, Simons argued that any pending matters in the District Court should be dismissed with prejudice because of the arbitration award's "no litigation" clause.  *Id.* at 3-4, 9.  Simons further argued that the award, which upheld the 2020 settlement agreement as valid and binding, was final and enforceable.  *Id.* at 11.  Brown opposed that motion and requested that the Court consolidate the two actions.  ECF 30, 19-5074.  I granted

4

consolidation but deferred any ruling on Simons' Motion to Enforce the Settlement. ECF 32, 19-5074; ECF 3, 22-3296.

Simons followed up with a Motion to Dismiss Brown's breach of contract claim and requesting that I remand the matter to the arbitration panel to resolve any remaining disputes. ECF 33, 19-5074. Simons argued that the arbitration panel explicitly retained jurisdiction of the dispute until the "transaction has been completed," divesting this Court of authority over the matter. But, for its part, the arbitration panel has communicated to the parties that it "unanimously believes it has no authority to do anything other than await the federal court's decision on the petition recently filed by Mr. Brown." Pl.'s Ex. A, ECF 34-1 at 2, 19-5074. It also seems that there is another matter pending between these parties in the Philadelphia Court of Common Pleas, purportedly awaiting resolution of this action. Pl.'s Ex. B, ECF 34-2 at 2, 19-5074.

**II.     Discussion**

This case returns in an unusual procedural posture. Simons seeks to enforce the second arbitration award but contends that the issue of breach is one for the arbitrators. Brown seeks to confirm the award, but simultaneously has brought an action for breach of contract, which only makes sense as an alternative remedy in the absence of a confirmed the award. Simultaneously, Brown seeks to pursue his pending motion for counsel fees related to the first arbitration, a position that is patently inconsistent with the arbitration award he now seeks to confirm. And lurking in the background is a state tort action that seemingly overlaps to some extent with this case. The order that accompanies this memorandum should suffice to steer this dispute toward a final resolution.

**A.  Brown's Petition to Confirm**

To have legal effect, arbitration awards must be submitted for judicial approval through a petition for confirmation. *See Teamsters Local 177 v. United Parcel Serv.*, 966 F.3d 245, 251-53

(3d Cir. 2020) (explaining that arbitration awards do not become legally enforceable documents until the award is confirmed by the District Court). The American Arbitration Association explicitly acknowledges its lack of enforcement authority: "the AAA and the arbitrator do not have the authority to actually make a party do what the award says."[3] A leading treatise on arbitration reflects this reality. *See* 2 Domke on Comm. Arb. § 42.1 ("One of the purposes of the court's review of an arbitration decision is to provide a mechanism for enforcement. Once confirmed, arbitration awards become enforceable court orders, and, when asked to enforce such orders, a court is entitled to require actions to achieve compliance with them.").

Most awards never reach this step because the parties simply comply with the arbitration award. But, when they do not, a party may seek confirmation under the Federal Arbitration Act:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must grant* such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9 (emphasis added). As made explicit in the statute, except for narrow circumstances not currently applicable, the District Court "must grant" a timely request to confirm an arbitration award. *See id.*; *Teamsters Local 177*, 966 F.3d at 251-52; *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 314 (3d Cir. 2021) ("[T]he summary proceedings that result from an FAA motion to confirm or vacate are not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm.") (internal quotations omitted).

---

[3] Available at https://www.adr.org/sites/default/files/document_repository/AAA229_After_Award_Issued.pdf, (last visited March 6, 2023).

After a petition to confirm is granted, the arbitration award is on the "same footing" as other legally enforceable documents. *See Teamsters Local 177*, 966 F.3d at 251 (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)). "Once a court confirms an arbitration award and makes it a judgment of the court, noncompliance with that order is separately analyzed." *Id.* On the other hand, unconfirmed awards may "serve as a cause of action, to be enforced in ordinary court procedure, as an action on the award." 2 Domke on Com. Arb. § 41:4; *see Teamsters Local 177*, 966 F.3d at 253 ("Without a confirmation order, the parties would essentially have to relitigate the case via a suit to enforce the arbitration award.").

Here, Mr. Brown filed a timely petition to confirm within two months of the second award, and no party has moved to vacate, modify, or correct the award. Simons does not even seem to oppose confirmation, as he seeks to dismiss Brown's breach of contract claim while simultaneously moving for enforcement of the award. *See* Def.'s Mot. to Dismiss, ECF 33 at 2, 19-5074 (seeking dismissal of "Count II of Brown's Complaint"); Def.'s Mot. to Enforce Settlement, ECF 29 at 4, 19-5074 (requesting that the court "enforce the settlement of the parties as found in the Award of June 7, 2022"). It is therefore appropriate to grant Brown's Petition to Confirm, making the arbitration award a legally enforceable document subject to enforcement proceedings. *See Teamsters Local 177*, 966 F.3d at 253 (stating that the District Court may penalize parties who fail to comply with a confirmed arbitration award "through contempt proceedings or the issuance of injunctive relief").

**B. Simons' Motion to Dismiss the Breach of Contract Claim**

Separately, Simons argues that Brown's breach of contract claim should be dismissed because the panel "retain[ed] jurisdiction of this matter until the above transaction has been finalized." Pl.'s Ex. C, ECF 1-5, 22-2396. To support his argument, Simons invokes the "complete arbitration" rule, which, like the final judgment rule, requires there be a final arbitration

award before District Court review.  *See Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio, and Mach. Workers of Am., Local 610*, 900 F.2d 608, 610-612 (3d Cir. 1990).  For example, in *Union Switch*, the Court explained that arbitration panels – especially those presiding over labor disputes – frequently "defer determination of the remedy" to encourage resolution between the parties.  *Id.* at 611.  There, the arbitrator issued an award finding that an employer violated a collective bargaining agreement and ordering back pay but explicitly deferred the method for calculations and payment to the parties.  *Id.* at 609.  Thus, the arbitrator "retain[ed] jurisdiction to make final rulings on any remedial disputes that the parties [were] unable to resolve after full discussion."  *Id.*  In such cases, the Third Circuit has cautioned that District Courts commit "serious error" by entertaining motions to vacate and/or enforce before the arbitration award has been finalized.  *Id.* at 609-10.  The purpose of this rule is to avoid further fragmentation of litigation and to facilitate efficient judicial administration.  *Id.* at 611-14.

Cases applying the "complete arbitration" rule generally arise in this context of collective bargaining disputes, in which there is a preliminary determination of contractual rights, but the amount of compensation owed must still be determined.  *See e.g., Pub. Serv. Elec. & Gas Co. v. Sys. Council U-2*, 703 F.2d 68, 69 (3d Cir. 1983); *Trustees of the Univ. of Pa. v. Teamsters Union Local 115 of Phila.*, No. 03-4968, 2004 WL 1275567, at *1-2 (E.D. Pa. June 10, 2004); *Verizon Pa. LLC v. Commc'ns Workers of Am.*, 216 F. Supp. 3d 530, 531, 534 (E.D. Pa. 2016).

In this case, though, the arbitration panel entered a final award on June 7, 2022, and did not defer any issues of damages or remedies to Brown and Simons.  In fact, it set forth exact amounts for the "put purchase price" and post-closing operating expenses, and expressly denied Brown's requests for other types of damages.  Pl.'s Ex. C, ECF 1-5, 22-3296.  There is no matter within the award that depended on further deliberation from the panel or the parties.  Simons

8

himself, in his Motion to Enforce the Settlement, even describes the award as "final." ECF 29 at 12, 19-5074.

In arguing that the arbitration panel continues to have jurisdiction, Simons focuses upon the following language in its award: "The panel shall retain jurisdiction of this matter until the above transaction has been finalized." Pl.'s Ex. C, ECF 1-5 at 3, 22-3296. He ignores the critical language immediately prior, which is important for context, providing that "[t]he date of closing on this Put shall take place at a mutually convenient location and at a time chosen by Mr. Brown within 60 days of this order." *Id.* Most significantly, there is no dispute that the closing was held as contemplated by the arbitrators and that Simons' interest in RDS was transferred to Brown on August 8, 2022. Compl. ¶ 40, ECF 1, 22-3296. The sole question remaining is whether the parties have complied with the terms of the award and, as noted above, arbitrators lack enforcement power. Simons' contention that this Court lacks jurisdiction is therefore without merit.

### C. The Legal Effect of Confirmation of the Award

Two additional pending motions are now ripe for resolution. First, Simons' Motion to Enforce the Settlement will be denied as moot. ECF 29, 19-5074. In that motion, Simons requested that I enforce the settlement between the parties and dismiss the pending action – namely, Brown's fee petition – with prejudice. Simons further argued that the arbitration award is final and enforceable, and that it requires the end of all litigation between the parties. Because my decision to confirm the award treats the award as final and makes judicial enforcement possible – and because, as I will explain momentarily, Brown's fee petition will also be dismissed – Simons' motion has become moot.

Likewise, Brown's Supplemental Motion for Attorney Fees and Costs will be denied as moot. ECF 23, 19-5074. In his recently filed action, Brown represented his willingness to withdraw his prior motion for counsel fees pursuant to the arbitration award's provisions ending

9

litigation between the parties and prohibiting reimbursement for attorney fees. Compl. ¶ 41-44, ECF 1, 22-3296. Beyond that, Brown cannot on the one hand seek to enforce the award prohibiting reimbursement of counsel fees, which he contends Simons breached, while simultaneously moving for relief inconsistent with that award. Necessarily, the award must be enforced equally as to both parties.

Finally, although I will deny Simons' Motion to Dismiss Brown's contract claim on the grounds that he asserts – a purported lack of jurisdiction – the viability of Brown's claim is unclear. As noted above, a party to an arbitration generally brings a contract claim only where the award has not been confirmed. Brown sought confirmation and will now receive it. As to the confirmed award, the arbitrators declined to consider damages outside the scope of the settlement they found had been reached, and one of the terms of the agreement is that there be no further litigation between the parties. Like Brown's motion for counsel fees related to the first arbitration, any claim that goes beyond enforcement of the award would seemingly violate the terms of the award itself. A rule to show cause will be entered as to why the contract claim should not be dismissed.

### III. Conclusion

For the reasons set forth above, Brown's Petition to Confirm will be granted and Simons' Motion to Dismiss will be denied. Simons' Motion to Enforce the Settlement will be denied as moot as well as Brown's Motion for Attorney Fees and Costs. An appropriate order follows.

                                                                        /s/ Gerald Austin McHugh
                                                                        United States District Judge