IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BROWN, JR. | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-3296 |
| | : | |
| ALAN SIMONS | : | |

| | | |
|---|---|---|
| ALAN SIMONS | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-5074 |
| | : | |
| JOHN BROWN et al. | : | |

**McHugh, J.**                                                                                                            **March 11, 2024**

**MEMORANDUM**

Perhaps predictably, one party to this bitter ligation seeks to prolong its life, despite two arbitrations, two confirmed awards, an intervening trip to the Third Circuit, and litigation of cross motions to enforce. Ironically, the party who now returns is the same party whose principal argument has been that this Court must enforce the "no litigation" clause in a settlement agreement found valid and binding at arbitration, and he does so with an "expert" presenting a new theory in a two-page certification.

In my recent memorandum opinion (ECF 49, 19-5074), because of the contentiousness of this litigation and the existence of the parties' "no litigation" clause, I enjoined the parties from filing additional motions without seeking leave of Court. (ECF 50, 19-5074). Mr. Simons now moves for leave to file a motion to recalculate the amount for which he is in contempt. I will not require Mr. Brown to incur the expense of answering, as this most recent filing borders on frivolous.

Mr. Simons contends that even though he took $1,255,947 from RDS Vending LLC in violation of the confirmed arbitration award, he remains entitled to half of it because he owned a 50% interest in the company at the time.  This argument ignores the fact that the parties have been litigating over specific conditions they agreed to in connection with transfer of ownership, which set parameters for what they could do – parameters that Mr. Simons ignored.  Any rights conferred by his fifty percent ownership share were explicitly limited by the enforceable settlement the parties reached.  His newly asserted claim to a share of what he wrongfully took from RDS – because he otherwise might have left more in the company than obligated – would require me to ignore the entire record in this litigation.

 Moreover, to reach his preferred result, Simons mischaracterizes my recent memorandum, arguing that "this Court *found that Simons complied* with his obligation to leave approximately $1 million in RDS" when he relinquished his stake in the company to Mr. Brown.  Simons' Mot. for Reconsideration at 7 (emphasis added).  Not so.  After commenting on how the parties' vague agreement and wildly conflicting expert reports confounded rational analysis, while conceding that Simons came closer to the mark, the only relevant holding was that "Brown *has not established* that Simons is in contempt on this term" by clear and convincing evidence.  Memorandum of February 27, 2024 at 11 (emphasis added).  I made no determination on the actual amount that Mr. Simons left at RDS.

Simons' mischaracterization becomes clearer still in my specific analysis of his entitlement to any cash distributions, where I explicitly held: "The term 'cash balance' does not suffer from the same ambiguity as 'post-closing expenses.'  No one, including Simons' own expert, contends that RDS possessed anywhere near enough in its 'cash balances' on or near August 8 to justify a

2

distribution of $275,000 to both Simons and Brown . . . . Simons was not entitled to take this money by any measure of accounting." *Id.* at 11-12.

The parties agreed to "No reimbursement to anyone of attorneys fees incurred," as reiterated by the second arbitration award and then confirmed by this Court. Despite this, Simons reimbursed $980,947 in personal attorneys' fees from RDS. The parties also agreed to share "any cash balances" over $1 million "ten days before" their transfer on August 8, 2022. Again, despite overwhelmingly evidence that the company had insufficient cash balances at this time, Simons paid himself an additional $275,000 from RDS. The Court has thus found by clear and convincing evidence that Mr. Simons wrongfully took $1,255,947 from RDS and is in contempt for failing to return these funds. He must repay this amount as outlined in my previous Order (ECF 50, 19-5074) to purge his contempt. His motion for leave will be denied.

                                                                                                     /s/ Gerald Austin McHugh
                                                                                                             United States District Judge